UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JASON R. HAAS,

                         Plaintiff,

  -against-                                    1:04-CV-1503
                                                       (LEK/RFT)

DELAWARE AND HUDSON RAILWAY
COMPANY, INC. d/b/a CP RAIL SYSTEM

                        Defendant.

## MEMORANDUM-DECISION AND ORDER

Plaintiff Jason Haas ("Plaintiff") was injured while working for Defendant Delaware and Hudson Railway Company, Inc. d/b/a CP Rail System ("D&H" or "Defendant") and commenced this action, pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq., for Defendant's failure to provide him with a safe place to work. Compl. (Dkt. No. 1). Presently before the Court is Defendant's Motion for summary judgment based on: (1) Plaintiff's failure to offer proof of a specific defect in the railroad switch that caused or contributed to his injury, (2) Plaintiff's failure to support his allegations of Defendant's negligence; and (3) the fact that the incident was not foreseeable because Defendant had no notice of any defect. Deft's Mem. of Law (Dkt. No. 9, Attach. 17) at 1.

**I.    Background**

D&H employed Plaintiff as a conductor and, on May 1, 2004, he was assigned to D&H's railroad yard in Binghamton, New York. Deft's Stmnt of Mat. Facts (Dkt. No. 9, Attach. 16) at

¶ 1. Between 4:30 and 5:00am that day, Plaintiff manually operated a rail switch in the yard known as the "north lead switch" or "new lead switch" (hereinafter, the "Switch").[1] Id. at ¶ 2. While Plaintiff could not identify anything wrong with the Switch, id. at ¶ 3, he testified that he had to use more force than normal when he threw the Switch that morning, which he asserts led to his injuries. Plntf's Add. Stmnt of Mat. Facts (Dkt. No. 12) at ¶¶ 1, 3. Plaintiff had operated the Switch before without incident and was not aware of any defect in it. Deft's Stmnt of Mat. Facts (Dkt. No. 9, Attach. 16) at ¶¶ 4-6.

Plaintiff did not report the injury to his shoulder to anyone on the day of the incident. Id. at ¶ 7. Plaintiff did not seek any first aid, completed the remained of his shift on May 1, and was able to work the next day as well. Id. at ¶ 8. However, Plaintiff testified that he felt a "little pull, a sharp pain" after throwing the Switch. Plntf's Add. Stmnt of Mat. Facts (Dkt. No. 12) at ¶ 4. Plaintiff also explained in his deposition that once he completed his shift around midnight on May 2, he immediately went back to his hotel room to get some rest so he would be able to go back to work, as expected, only eight (8) hours later at 8:00am. Id. at ¶ 5. Plaintiff recalled that he did tell his co-workers the following morning, May 2, that the pain in his shoulder caused him to sleep badly the previous night. Id. at ¶ 6. Moreover, Plaintiff explained that he was able to work a full eight (8) hour shift on May 2 because of the light workload at the yard that day. Id. at ¶ 7. Plaintiff testified that he realized the evening of May 2 that he was injured, and not just sore, when he was unable to move his arm during dinner with his family. Id. at ¶ 8.

---

[1] A rail switch is a device usually made of two movable rails that is designed to turn a train from one track to a neighboring track. MERRIAM-WEBSTER'S THIRD NEW INT'L DICTIONARY (1986); Plntf's Mem. of Law (Dkt. No. 11, Attach. 1) at 2.

At 11:30am on May 3, Plaintiff called William Farley ("Farley"), the terminal coordinator at the yard, and reported that he had been injured. Deft's Stmnt of Mat. Facts (Dkt. No. 9, Attach. 16) at ¶ 10. Farley testified that Plaintiff told him that he did not know how he hurt his shoulder, but Plaintiff did tell him that the Switch had been hard to throw. Id. at ¶ 11; Farley Dep. (Dkt. No. 9, Attach. 12, Ex. I) at 9-10. During their telephone conversation, Plaintiff told Farley that he had not reported his injury the day it occurred, as he was required to by D&H's rules, because he did not know he was injured or where he had been injured. Farley Dep. (Dkt. No. 9, Attach. 12, Ex. I) at 9. However, Plaintiff did inform Farley that the only difficulty he had on the day of the incident was that the Switch had been hard to throw. Farley Report (Dkt. No. 9, Attach. 13, Ex. J). After their conversation, at approximately 1:00pm, Farley visually inspected the Switch, did not observe anything blocking it, and also threw it and determined that it was operating normally. Deft's Stmnt of Mat. Facts (Dkt. No. 9, Attach. 16) at ¶ 12; Farley Dep. (Dkt. No. 9, Attach. 12, Ex. I) at 6. On May 4, Plaintiff sought treatment for his injury from Drs. Robert Hedderman and Hani Midani. Deft's Stmnt of Mat. Facts (Dkt. No. 9, Attach. 16) at ¶ 14.

Pursuant to federal regulations, the Switch would have been inspected, generally towards the end of every month, by Paul Spisak ("Spisak"), a track foreman, who prepared reports to document his inspections. Id. at ¶¶ 15, 18. A switch would also be inspected if a report was received that it was hard to throw. Id. at ¶ 15. The rail switches in the yard are oiled once a week. Id. at ¶ 16.

D&H claims that the Switch at issue was fairly new (less than five (5) years old) and

thrown infrequently, which would mean that it needed less maintenance than other rail switches. See id. at ¶ 17.  Spisak inspected the Switch on February 26, March 31, and April 27, 2004 and found that it was operating properly.  Id. at 19.  Moreover, in his deposition, Spisak stated that he was not aware of anyone complaining about the Switch.  Spisak Dep. (Dkt. No. 9, Attach. 14, Ex. K) at 24.  In response to Defendant's Motion, Plaintiff submitted an affidavit from Gary Sheehan ("Sheehan"), one of his co-workers and a union representative for the United Transportation Union.  Sheehan Aff. (Dkt. No. 11, Attach. 5).  Sheehan made several representations in his affidavit regarding the condition of the Switch and complaints made to Defendant.  Id.  However, as discussed below, the Court has not considered Sheehan's affidavit and does not recount its specifics here.

**II.     Discussion**

   **A.     Motion to Preclude Sheehan Affidavit**

Defendant argues that the Court should disregard Sheehan's affidavit because Plaintiff failed to disclose Sheehan as a witness at any point during discovery in this case.  Deft's Reply (Dkt. No. 16, Attach. 1) at 2.  D&H asserts that Plaintiff failed to supplement or correct his discovery response, as he is required to do under Rule 26(e) of the *Federal Rules of Civil Procedure*, when he learned that his answers were materially incomplete or incorrect.  Id. at 3.  D&H only learned of Plaintiff's reliance on Sheehan's affidavit in his response to the Motion for summary judgment.

Rule 37(c)(1) of the *Federal Rules of Civil Procedure* provides, in relevant part: "A party

4

that without substantial justification fails to disclose information as required by . . . Rule 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED. R. CIV. P. 37(c)(1). This rule prevents a party from using information in summary judgment motions not previously disclosed to opposing counsel. Fleming v. Verizon N.Y., Inc., No. 03 Civ. 5639 (WHP), 2006 U.S. Dist. LEXIS 68632, at *22 (S.D.N.Y. Sept. 25, 2006). The intention behind this preclusionary rule is to prevent the practice of "sandbagging" an adversary with new evidence. Id. (quoting Ventra v. United States, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000)). However, courts have recognized that preclusion of evidence is a "drastic remedy and should be exercised with caution." Id.

Courts disagree regarding the requirements for excluding nondisclosed information at trial and on a motion. Hein v. Cuprum, S.A., 53 Fed. Appx. 134, 137 (2d Cir. 2002) (unpublished). While some trial courts in this Circuit have read a bad-faith requirement into Rule 37(c)(1), the Second Circuit has not expressed an opinion regarding whether such a showing is necessary before evidence may be excluded under the rule. Id. Rule 37(c)(1) is written in mandatory terms, and is designed to provide strong inducement for disclosure of information, however, the rule does expressly provide that the information should not be excluded if the failure to disclose was harmless or if a substantial justification exists for such a failure. Design Strategies, Inc. v. Davis, 367 F. Supp. 2d 630, 634 (S.D.N.Y. 2005) (citing Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995)). As a result, the Court will preclude the use of Sheehan's affidavit if there was not a substantial justification for Plaintiff's

5

failure to disclose his information or unless the failure to disclose was harmless.  Id.

D&H explains that it served interrogatories on Plaintiff's attorney requesting the "name, address and present whereabouts of anyone whom [Plaintiff] believe[s] was not a witness to [his] accident but has knowledge of it."  Deft's Reply (Dkt. No. 16, Attach. 1) at 2; Plntf's Interrogatory Answers (Dkt. No. 9, Attach. 5, Ex. C) at ¶ 5.  Plaintiff's reply refers to George McNulty, a trainee with McNulty, Bill Coleman, his treating physicians, and D&H's claims agents.  Id.  D&H also states that it asked Plaintiff to identify whether there was actual or constructive notice of the Switch's condition and the names and addresses of any witnesses Plaintiff intended to call at trial regarding the notice issue.  Deft's Reply (Dkt. No. 16, Attach. 1) at 3; Plntf's Interrogatory Answers (Dkt. No. 9, Attach. 5, Ex. C) at ¶ 23.  Plaintiff did not disclose Sheehan's potential testimony in his answer to D&H's interrogatory.  Id.

Without offering any justification for his delay, Plaintiff did not ultimately disclose Sheehan's information in this litigation until filing his response to D&H's Motion for summary judgment, a year and a half after Plaintiff commenced this action.  Sheehan claims to have made representations to D&H management regarding the condition of the Switch, which is directly relevant to the issue of whether D&H had notice of any defect and was negligent in correcting such a problem.  Plaintiff's failure to disclose information made known to him by Sheehan cannot be considered harmless.  For the Court to consider the information presented in Sheehan's affidavit, information that D&H has not been allowed to examine and challenge, would significantly prejudice D&H.  Accordingly, the Court is precluded from considering the information contained in Sheehan's affidavit and has only considered that information properly

6

in the record when evaluating D&H's Motion.

  **B.** **Summary Judgment Standard**

D&H's Motion for summary judgment pursuant to Rule 56 of the *Federal Rules of Civil Procedure* may be proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Courts applying this standard must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment."  Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216) (2d Cir. 2006)).

Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted).  The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor."  Brown, 257 F.3d at 251 (citation omitted).  Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### C. Liability Under FELA

However, the standards governing liability under FELA do alter the Court's determination of whether to grant summary judgment. FELA, in pertinent part, provides:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carried in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road bed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. FELA is "'a broad remedial statute to be construed liberally to effectuate its purpose.'" Pothul v. CONRAIL, 94 F. Supp. 2d 269, 271 (N.D.N.Y. 2000) (McAvoy, D.J.) (quoting Atchison, Topeka and Sante Fe Ry. Co. v. Buell, 480 U.S. 557, 562 (1987)). A railroad may be liable for an unsafe workplace under FELA "when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees. Reasonable care is determined in light of whether or not a particular danger was foreseeable." Syverson v. Consol. Rail Corp., 19 F.3d 824, 826 (2d Cir. 1994) (internal quotation omitted). Foreseeability in FELA actions "requires proof of actual or constructive notice to the employer of the defective condition that caused the injury." Hairston v. Long Island R.R., No. 00 Civ. 7208 (JCF), 2003 U.S. Dist. LEXIS 9015, at *15 (S.D.N.Y. May 30, 2003)(citing Gallose v. Long Island R.R., Co., 878 F.2d 80, 85 (2d Cir. 1989)).

While FELA is not a strict liability statute, the remedial nature of the statute means that a plaintiff need not make the standard showing of common-law negligence to survive a motion for summary judgment. Johnson v. Long Island R.R. Co., No. 03-CV-1021(KMK), 2007 U.S. Dist. LEXIS 926, at *9 (S.D.N.Y. Jan. 4, 2007) (collecting cases). Therefore, under FELA, "the test of

8

a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, event the slightest, in producing the injury or death for which damages are sought." Id. at *10 (quoting Syverson, 19 F.3d at 826). This means that the Court can only dismiss the case at the summary judgment phase if there is absolutely no reasonable basis for a jury to find for Plaintiff. See Syverson, 19 F.3d at 828.

  D&H does not challenge the existence of Plaintiff's injury or the time, location or cause of his injury. Deft's Reply (Dkt. No. 16, Attach. 1) at 2. The issue is whether Plaintiff's testimony and the other evidence in the record are sufficient to permit a reasonable jury to find that D&H had actual or constructive knowledge of a defect to the Switch such that D&H violated its duty to provide a safe workplace. While Plaintiff claims that the Switch was hard to throw on the day in question, in his deposition he could not identify any defect in the Switch that day. Deft's Stmnt of Mat. Facts (Dkt. No. 9, Attach. 16) at ¶ 3. Accordingly, there is nothing before the Court that suggests that the Switch was defective in any way when Plaintiff injured his shoulder.

  Furthermore, there is no evidence in the record to support a determination that D&H had actual or constructive notice of any potential defect in the Switch. Plaintiff alleges, without any other evidentiary support, that the Switch had been the subject of prior complaints and was the subject of a posting in the employees' work room. Plntf's Stmnt of Mat. Facts (Dkt, No. 12) at ¶ 5. However, it is undisputed that toward the end of each month, Spisak, the track foreman at the rail yard, did inspect the rail switches in the yard. Deft's Stmnt of Mat. Facts (Dkt. No. 9, Attach. 16) at ¶¶ 15, 18. Moreover, Plaintiff does not dispute that D&H procedures would

normally require that a rail switch be inspected if a report was received that it was hard to throw.[2] Id. at ¶ 15. Spisak testified, and D&H's records confirm, that he inspected the Switch on February 26, March 31, and April 27, 2004, just four days before Plaintiff's injury, and found that it was operating properly. Id. at 19. Nor had anyone reported any complaints regarding the Switch to Spisak. Spisak Dep. (Dkt. No. 9, Attach. 14, Ex. K) at 24. After receiving a call from Plaintiff two days after the incident, Farley, the terminal coordinator at the yard, visually inspected the Switch and did not observe anything blocking it; he also threw it and determined that it was operating normally. Deft's Stmnt of Mat. Facts (Dkt. No. 9, Attach. 16) at ¶ 12; Farley Dep. (Dkt. No. 9, Attach. 12, Ex. I) at 6.

      D&H's employees maintained procedures to inspect rail switches in the yard and subjected the Switch to those procedures. Having followed those procedures, D&H inspected the Switch shortly before and after the incident and was in a position to know whether there was a defect in the Switch. Plaintiff has not submitted any evidence to the Court, other than his own vague recollections, that suggests that D&H knew or should have known about a defect in the Switch. As a result, even considering FELA's broad remedial standards, Plaintiff has simply not provided sufficient evidence to permit a reasonable jury to find that D&H had actual or constructive knowledge of a defect to the Switch and that D&H violated its duty to provide a safe workplace.

---

[2] However, Plaintiff disputes that D&H followed this procedure in connection with reports it received about the Switch. Plaintiff submitted the affidavit from Sheehan asserting that the Switch was reported as defective, but not inspected. But, as explained in Section II.A, *supra*, the Court did not consider this evidence in reaching its decision.

### III.     Conclusion

Accordingly, it is hereby

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its **ENTIRETY**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties by regular mail.

**IT IS SO ORDERED.**

DATED:      March 08, 2007
            Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge